# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

RYAN ALLEN C.,[1]

                   Plaintiff,

    v.

KILOLO KIJAKAZI,[2]
Acting Commissioner of Soc. Sec. Admin.,

                   Defendant.

Case No. 3:20-cv-00220-SLG

## DECISION AND ORDER

On or about August 14, 2017, Ryan Allen C. ("Plaintiff") protectively filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"),[3] alleging disability beginning September 1, 2010.[4] Plaintiff has exhausted his

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title II in this case. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") 206. Plaintiff amended his application with a new disability onset date of September 1, 2010. A.R. 218. The amended application summary lists August 15, 2017 as the application date. A.R. 206.

administrative remedies and filed a Complaint seeking relief from this Court.[5] Plaintiff's opening brief asks the Court to vacate and remand the agency's decision for a de novo hearing with Plaintiff's counsel present.[6] The Commissioner filed an Answer and a brief in opposition to Plaintiff's opening brief.[7] Plaintiff filed a reply brief on March 29, 2021.[8] Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9] For the reasons set forth below, Plaintiff's request for relief is granted.

## I.      STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than

---

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 21 (Plaintiff's Br.).

[7] Docket 19 (Answer); Docket 22 (Defendant's Br.).

[8] Docket 23 (Reply).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 2 of 29

a preponderance."[12]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[15]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17]  In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[18]

---

[12] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

## II.    DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19]  In addition, Supplemental Security Income ("SSI") may be available to individuals who are age 65 or older, blind, or disabled, but who do not have insured status under the Act.[20]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[22]

---

[19] 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1381a.

[21] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 4 of 29

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[27] *The ALJ determined that Plaintiff had not engaged in substantial activity during the period from his alleged onset date of September 1, 2010 through his date last insured of December 31, 2017.[28]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the

---

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[26] *Tackett*, 180 F.3d at 1101.

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 15.

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 5 of 29

twelve-month duration requirement.[29] *The ALJ determined that Plaintiff had the following severe impairments: right shoulder hypermobility and obesity. The ALJ determined that Plaintiff's migraine headaches; sleep apnea; shin splints; knee injuries; flat feet; keratoconus; major depressive disorder; and panic disorder were non-severe impairments.[30]*

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[31] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[32]*

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[33]

---

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[30] A.R. 15–17.

[31] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[32] A.R. 20.

[33] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 6 of 29

*The ALJ determined that Plaintiff had the residual functional capacity to perform light work, but with the following limitations: occasional climbing of ladders, ropes, or scaffolds; frequent kneeling, crouching, or crawling; frequent reaching in all directions with the right upper extremity; and avoidance of concentrated exposure to hazardous machinery and hazardous heights.[34]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[35] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was not capable of performing any past relevant work.[36]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[37] *The ALJ determined that other jobs existed in significant numbers in the national economy that Plaintiff could perform, including assembler of small parts; ticket taker; and food service worker.[38]*

---

[34] A.R. 20.

[35] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[36] A.R. 23.

[37] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[38] A.R. 23–24.

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 7 of 29

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 1, 2010, through December 31, 2017, the date last insured.[39]

## III.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1987 and is 34 years old.[40]  Plaintiff reported working as an aircraft maintenance specialist in the United States Air Force until September 2012.[41]  On September 21, 2017, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[42]  The SSA affirmed the initial determination on reconsideration.[43]  Plaintiff appeared and testified without representation at a hearing held on September 20, 2019 in Anchorage, Alaska, before ALJ Cecelia LaCara.[44]  On November 8, 2019, the ALJ issued an unfavorable ruling.[45]  On July 20, 2020, the Appeals Council denied Plaintiff's request for review.[46]  On September 8, 2020, Plaintiff appealed

---

[39] A.R. 24.

[40] A.R. 206.

[41] A.R. 49–50, 281.

[42] A.R. 87.

[43] A.R. 105.

[44] A.R. 34–37, 47–54.

[45] A.R. 10–24.

[46] A.R. 1–5.

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 8 of 29

the Commissioner's final decision to this Court; he is represented by counsel in this appeal.[47]

## IV.    DISCUSSION

Plaintiff's opening brief alleges that the ALJ: (1) violated Plaintiff's due process right to representation; (2) violated Social Security Administration policy by having the medical experts testify without hearing Plaintiff's testimony; and (3) failed to develop the record regarding all of Plaintiff's impairments, including bilateral shoulder impairments; flat feet; knee joint laxity; headaches; imaging consistent with back pain; and mental impairments.[48]

### A.  Due Process Right to Representation and Lack of Counsel

Plaintiff alleges that the ALJ violated his right to representation "when [the ALJ] denied his reasonable request for postponement to obtain an attorney."[49]    The Commissioner asserts that Plaintiff's right to representation claim is limited to constitutional due process.    Specifically, the Commissioner alleges that the ALJ's good cause decision under 20 C.F.R. § 404.936 is not subject to judicial review.    The Commissioner contends that under a constitutional due process analysis, Plaintiff received meaningful notice and an opportunity to be heard.[50]

//

---

[47] Docket 1.

[48] Docket 21 at 3–15.

[49] Docket 21 at 3–6.

[50] Docket 22 at 4–8.

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 9 of 29

1. *Legal standard*

Claims alleging violations of procedural due process "require (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."[51]  Claimants seeking Social Security disability benefits have a property interest in those benefits and are entitled to due process in the determination of their claims.[52]  "It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied."[53]

Additionally, the regulations governing Social Security hearings allow for claimants to appear with or without representation at a hearing before an ALJ.[54]  An ALJ will reschedule the time or place of a hearing when "good cause" exists.  The regulations define "good cause" as:

(i)  A serious physical or mental condition or incapacitating injury makes it impossible for [claimant] or [claimant's] representative to travel to the hearing, or a death in the family occurs; or

(ii)  Severe weather conditions make it impossible for [claimant] or [claimant's] representative to travel to the hearing.[55]

---

[51] *Kildare v. Saenz,* 325 F.3d 1078, 1085 (9th Cir. 2003).

[52] *Holohan v. Massanari,* 246 F.3d 1195, 1209 (9th Cir. 2001) ("We recognize this principle as governing administrative adjudications of social security benefit claims.").

[53] *Udd v. Massanari,* 245 F.3d 1096, 1099 (9th Cir. 2001) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)).

[54] 20 C.F.R. §§404.900, 404.916.

[55] 20 C.F.R. §404.936(f)(1).

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 10 of 29

Outside of these catastrophic circumstances, an ALJ will "consider [a claimant's] reason(s) for requesting the change, the facts supporting it, and the impact of the proposed change on the efficient administration of the hearing process."[56] The regulations give specific examples, including:

(i)     [Claimant] unsuccessfully attempted to obtain a representative and need[s] additional time to secure representation;

(ii)    [Claimant's] representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing;

(iii)   [Claimant's] representative has a prior commitment to be in court or at another administrative hearing on the date scheduled for the hearing;

(iv)    A witness who will testify to facts material to [claimant's] case would be unavailable to attend the scheduled hearing and the evidence cannot be otherwise obtained;

(v)     Transportation is not readily available for [claimant] to travel to the hearing; or

(vi)    [Claimant is] unrepresented, and [claimant is] unable to respond to the notice of hearing because of any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which [claimant] may have.[57]

An agency's failure to follow its own regulations does not, standing alone, establish a violation of constitutional due process.[58] A challenge to the merits of an ALJ's decision regarding "good cause" also does not set forth a constitutional claim. Due process does,

---

[56] 20 C.F.R. §404.936(f)(2).

[57] 20 C.F.R. §404.936(f)(2).

[58] *Brown v. Holder,* 763 F.3d 1141, 1148 (9th Cir. 2014) ("[W]hile courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, . . . the basis for such reversals is not . . . the Due Process Clause, but rather a rule of administrative law.'") (internal quotation omitted).

however, require the ALJ to consider all "potentially valid reasons" offered by a claimant for establishing good cause.[59]

2. *Plaintiff's due process right to representation*

In this case, Plaintiff initiated his application in Florida.[60]  At that time, he was represented by counsel.[61]  In January 2019, Plaintiff informed his counsel of his move to Alaska and his counsel withdrew representation as Plaintiff was no longer in the attorney's jurisdiction.[62]  Plaintiff's case was transferred to the Alaska Social Security office in March 2019.[63]  On June 13, 2019, the agency sent Plaintiff notice that his hearing was scheduled for September 20, 2019.  The notice included the process for objecting to the hearing date and time and a notice of his right to representation.[64]  The notice also informed Plaintiff that he was required to attend his hearing on the scheduled date.  Specifically, the notice stated, "[i]f you do not attend the hearing and [the ALJ] do[es] not find that you have a good reason, [the ALJ] may **dismiss** your request for hearing.  [The ALJ] may do

---

[59] *Dexter v. Colvin,* 731 F.3d 977, 980–81 (9th Cir. 2013) (The Ninth Circuit court held that Dexter stated a colorable due process claim because she presented a reason constituting good cause under the Social Security Administration's regulations.  The court remanded for the ALJ's failure to consider Dexter's potentially valid reasons for delay.).

[60] A.R. 206, 218.

[61] A.R. 152.

[62] *Id.*

[63] A.R. 35, 154.

[64] A.R. 155–63.

so without giving you further notice."[65]

On July 1, 2019, a Senior Attorney at the Social Security Office of Hearings Operations called Plaintiff. After Plaintiff informed the attorney that he was no longer represented by counsel, the attorney stated the following to Plaintiff:

> If you do not have a representative by the time of your scheduled hearing, you must be prepared to proceed with the hearing without a representative. Additionally, absent extraordinary circumstances, no postponement will be granted. Extraordinary circumstances generally include: incarceration, institutionalization, natural disasters, very unusual circumstances directly related to your impairments, a serious illness preventing your appearance at the scheduled hearing, or death or serious illness in your immediate family. Extraordinary circumstances do not include delaying to the last-minute the appointment of a representative.[66]

Plaintiff appeared at his hearing on September 20, 2019 and at the outset of that hearing, requested a postponement to find legal representation.[67] The following exchange took place:

> Plaintiff: . . . I would like to ask for a postponement. I have been unable to find representation.
>
> ALJ: You were advised of your rights to counsel back in July.
>
> Plaintiff: Yes, Your Honor.
>
> ALJ: What is the issue? I mean, we're into September. So that – I mean, that's the purpose of the pre-hearing conference, is to give you enough time to figure out whether or not you're willing to attend the hearing, with or without counsel. So I'm – I'd like to hear why you think you deserve a second or additional time.

---

[65] A.R. 155 (emphasis in original).

[66] A.R. 176.

[67] A.R. 34.

Plaintiff: Of course. I did have representation when I was awaiting my hearing, when I was living down in Florida. After my divorce, I moved up here. And I had to not use my representative down there, unforunatley [*sic*], as they were not willing to travel. After I got up here, I did call around to everybody I could. No attorney wanted to take my case as a representative, because I was over the year and a half mark of waiting, and none of them knew, or didn't want to take the case at that point, because it could have been at any moment. After I actually received the notice, notification of hearing, I couldn't find anyone because it was too soon to the date, unfortunately.[68]

The ALJ decided to move forward with the hearing, explaining:

All right. So here's the thing. Because we provided you with notice of your right to representation — in looking at the right to representation contact form, that appears in your file at 19B, I saw nothing that indicated that you did not understand, and that you were reminded of the hearing September 20 — about the hearing that was scheduled for September 20th, and that the attorney reminded you to update your medical records and to fill out the forms. I don't see anything that — in this, that indicates that you did not know that you needed to try and find an attorney, and if you were not able to find an attorney, that you were going to represent yourself if you chose to appear at the hearing.[69]

Plaintiff replied, "Yes, Your Honor" and the hearing then proceeded. [70]

In his opening brief, Plaintiff argues that the ALJ failed to consider the circumstances surrounding his "earnest desire for representation" and failed to explain on the record why Plaintiff's circumstances did not justify a postponement.[71] Plaintiff presented potentially valid reasons for seeking a postponement at his hearing—

---

[68] A.R. 34–35, 152.

[69] A.R. 35, 175–76.

[70] A.R. 35.

[71] Docket 21 at 4.

specifically, his unsuccessful efforts to obtain new counsel in Alaska after his attorney in Florida withdrew representation due to Plaintiff no longer living in the attorney's jurisdiction.[72]   This reason may constitute "good cause" for a postponement as contemplated by the regulations.[73]   Importantly, the ALJ made no inquiry into the specific circumstances of Plaintiff's situation or his efforts to obtain substitute counsel after he relocated to Alaska.[74]   And, had the ALJ so inquired, the ALJ would have learned that Plaintiff had found an attorney who had agreed to represent him before the SSA, but that attorney "had a scheduling conflict" on the day of the hearing.[75]   Moreover, the ALJ's reference to the July 1, 2019 attorney's statement that postponement would be granted only in extraordinary circumstances is a higher standard than required for a claimant to show "good cause" set forth in the agency's regulations.[76]   In sum, the ALJ's failure to address Plaintiff's potentially valid reasons to obtain a postponement violated due

---

[72] A.R. 34–35, 152.

[73] A.R. 34–35; see 20 C.F.R. §404.936(f)(2)(i), (iii) (listing as examples of circumstances that may warrant a finding of good cause that "You unsuccessfully attempted to obtain a representative and need additional time to secure representation" and "Your representative has a prior commitment to be in court or at another administrative hearing on the date scheduled for the hearing.").

[74] A.R. 34–35.

[75] A.R. 197–200.  Plaintiff and Attorney Bam both signed a fee agreement on September 20, 2019. The Office of Hearings Operations received the fee agreement on September 26, 2019. A.R. 197. Attorney Bam signed the SSA's Representative's Acceptance of Appointment form on September 23, 2019.  This form was received by the Office of Hearings Operations on September 26, 2019. A.R. 198.

[76] See Arga on behalf of L.T. v. Comm'r, Soc. Sec. Admin., 2019 WL 3503998, at * 3 (D. Ore. July 7, 2019) ("Here, the ALJ failed to consider whether Plaintiff showed good cause for postponement as required by the regulations and instead substituted her own rule for making that determination." The ALJ stated she would only grant another postponement in "extraordinary circumstances" and that she only granted one postponement per case.).

process.[77]

B. <u>Medical Expert Testimony</u>

Plaintiff asserts that the ALJ violated agency policy by having the medical experts testify at the beginning of the administrative hearing.[78]  Plaintiff's claim is based on the Social Security Agency's internal policy manual, the Hearings, Appeals, and Litigation Manual ("HALLEX") § I-2-6-70(b), which provides in pertinent part:

> The [medical expert] may attend the entire hearing, but this is not required. If the [medical expert] was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the [medical expert] on the record.  If additional medical evidence is received at the hearing, the ALJ will provide it to the [medical expert] for review before the [medical expert] testifies.[79]

Citing the promulgation of SSR 13-2p, Plaintiff argues that the ALJ is obligated to follow SSA policies as set forth in the HALLEX.[80]  He alleges that in this case, both

---

[77] *Dexter v. Colvin,* 731 F.3d at 981 ("[I]f a claimant provides a facially legitimate reason that constitutes 'good cause' under the Commissioner's regulations, . . . then due process requires the ALJ to address it.").

[78] Docket 21 at 6.

[79] HALLEX I-2-6-70(b)(S.S.A.), *available at* 1993 WL 751901.

[80] Docket 21 at 6.  Social Security Ruling ("SSR") 13-2p, states in pertinent part:

15. How should adjudicators consider Federal district and circuit court decisions about DAA?

. . .

> a. General.  We require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX).

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 16 of 29

medical experts "testified without reviewing the claimant's testimony, in direction violation of HALLEX I-2-6-70(b)," resulting in a failure to consider all of Plaintiff's impairments and limitations. He requests remand based on this error.[81]

The Commissioner does not dispute that the medical experts testified prior to the Plaintiff and therefore, the medical experts were unaware of Plaintiff's testimony when they rendered their opinions. But the Commissioner contends that the HALLEX does not impose judicially enforceable duties. The Commissioner also asserts that the regulations unambiguously state that the ALJ "may decide when the evidence will be presented and when the issues will be discussed."[82]

The Ninth Circuit has held that the HALLEX is not binding on the ALJs and is not enforceable by the courts.[83] Moreover, SSR 13-2p is not applicable to the facts of Plaintiff's case. SSR 13-2p is a policy clarifying how the SSA determines "whether 'drug addiction and alcoholism' (DAA) is material to [SSA's] determination of disability."[84] As other district courts in the Ninth Circuit have held, SSR 13-2 is not binding here because

---

SSR 13-2p, *available at* 2013 WL 621536, at *15 (Feb. 20, 2013).

[81] Docket 21 at 6–9.

[82] Docket 22 at 8 (citing 20 C.F.R. §404.944).

[83] *See Roberts v. Comm'r of Soc. Sec. Admin.,* 644 F.3d 931, 933 (9th Cir. 2011) ("HALLEX . . . does not carry the force of law and is not binding upon the agency. Therefore, we do not review allegations of non-compliance with its provisions.") (internal quotations and citations omitted); *Lockwood v. Comm'r Soc. Sec.,* 616 F.3d 1068, 1072 (9th Cir. 2010) ("HALLEX does not impose judicially enforceable duties on either the ALJ or this court.") (internal citations omitted).

[84] SSR 13-2p, *available at* 2013 WL 603764. *See also* 20 C.F.R. §402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009) ("SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless.").

Plaintiff is not claiming the ALJ improperly applied the drug and alcohol dependence factors.[85]  And, even after SSR 13-2p was enacted, the Ninth Circuit has continued to hold that the SSA's internal policy manuals such as HALLEX  do not give rise to legally enforceable rights.[86]  In very recent decisions, district courts in the Ninth Circuit have also continued to hold that the HALLEX is not binding on ALJs and is not legally enforceable by federal courts.[87]  In this case, reversal is not warranted solely based on the ALJ's decision to have the medical experts testify before Plaintiff testified.  However, the Court reverses for the ALJ's failure to adequately evaluate Plaintiff's physical limitations due in part to the ALJ's inadequate questioning of Dr. Golub and incomplete examination of the VE as outlined below.

## C.  Left Shoulder Impairment

Plaintiff asserts that the ALJ failed to inquire as to the severity of Plaintiff's left

---

[85] *Kathleen v. Saul,* Civ. No. 3:19-cv-00651-JLS-RNB, 2020 WL 353602, at *7 (S.D. Cal. Jan. 21, 2020) ("As Plaintiff does not claim the ALJ improperly applied the Plaintiff's drug or alcohol dependence in his disability determination, SSR 13-2p is not binding.") (citing *Martinez v. Colvin,* Civ. No. 6:14-cv-01703-MC, 2016 WL 270911, at *5 (D. Or. Jan. 20, 2016) ("Plaintiff made no claims that there were misinterpretations of policies relating to drug addiction and alcoholism in this case.  Therefore, SSR 13-2p is inapplicable here and does not change this Court's application of *Lockwood.* . ."); *Hollen v. Comm'r of Soc. Sec.*, 2017 WL 1075194, at *8–9 (S.D. Cal. Mar. 22, 2017) ("[A]s SSR 13-2p does not mandate the ALJ follow HALLEX procedures, the ALJ did not err by refusing to summarize Plaintiff's subjective testimony for the ME.").  A court or litigant may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007.  U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

[86] *See*, *e.g.*, *Wilson v. Berryhill*, 732 F. App'x 504, 507 (9th Cir. 2018); *Withrow v. Colvin*, 672 F. App'x 748, 749 (9th Cir. 2017); *Whitten v. Colvin*, 642 F. App'x 710, 713 (9th Cir. 2016); *Durden v. Colvin*, 546 F. App'x 690, 690-91 (9th Cir. 2013).

[87] *See James v. Saul,* Civ. No. 19-cv-5881-KS, 2020 WL 3491565, at *10 (C.D. Cal., June 25, 2020) (HALLEX and POMS "are not binding on ALJs and are not legally enforceable by federal courts.").

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 18 of 29

shoulder impairment and failed to adequately evaluate the resulting limitations in the RFC because testifying medical expert Dr. Golub only addressed Plaintiff's right shoulder impairment in his testimony.[88] A court should affirm an ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and [her] decision is supported by substantial evidence."[89] "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe."[90] However, it is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."[91]

Here, Dr. Golub testified that Plaintiff had a history of an unstable right shoulder and that he believed Plaintiff "even had a surgical procedure" for that shoulder. Dr. Golub opined that Plaintiff's right shoulder impairment was not severe but nonetheless caused some limitations with raising his right shoulder above his head and lifting heavy objects. Dr. Golub also testified that Plaintiff should be limited to lifting and carrying 10 pounds frequently and 20 pounds occasionally for both upper extremities, not just the right side. But then he added, "But just the use of that function that would recruit that right shoulder, would have to be on an occasional basis. The other shoulder would not [be] [a]ffected."[92]

---

[88] Docket 21 at 9–11.

[89] *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

[90] SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017).

[91] *Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001).

[92] A.R. 43, 45-46.

Later in the hearing, Plaintiff made an effort to correct Dr. Golub's testimony regarding Plaintiff's shoulders. Specifically, Plaintiff stated, "[u]nfortunately, the doctor had [ ] incorrect information given to him. It was my left shoulder that was operated on, not my right." Plaintiff further clarified that his left shoulder had multidirectional instability and his right shoulder had a torn ligament.[93] The record supports Plaintiff's testimony. For example, Plaintiff's VA disability report noted that Plaintiff had a left shoulder condition with multiple surgeries, an abnormal range of motion in the left shoulder, and difficulty lifting and reaching with the left shoulder.[94] At an examination on January 12, 2016, Plaintiff's treating orthopedic surgeon, Edward Homan, M.D., observed "very obvious multidirectional instability of [Plaintiff's] left shoulder but less obvious with the right." Dr. Homan also noted a possible right shoulder rotator cuff tear."[95]

At the hearing, the ALJ did not elicit any additional information from Plaintiff or Dr. Golub regarding Plaintiff's left shoulder.[96] The ALJ did not include any limitations for the bilateral upper extremities in the hypotheticals provided to the VE, even though Dr. Golub testified to functional limitations for both upper extremities and the ALJ found Dr. Golub's testimony very persuasive.[97] As a result, the RFC includes only a limitation of frequent

---

[93] A.R. 52.

[94] A.R. 402, 408–09.

[95] A.R. 731.

[96] 42–54.

[97] A.R. 21, 45.

The ALJ's first hypothetical to the VE was as follows:

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 20 of 29

reaching in all directions with the right upper extremity.[98]  The ALJ did not adequately

include Plaintiff's bilateral limitation of the upper extremities in the RFC.  The ALJ's failure

to address Plaintiff's left shoulder impairment is not harmless and is reversable error.[99]

### D. Duty to Develop the Record

Plaintiff asserts that he was prejudiced by the ALJ's failure to inquire into the

relevant facts at the hearing regarding Plaintiff's limitations, including limitations with

standing and walking due to shin splints; back pain; chronic knee pain; flat footedness;

and mental impairments.[100]  The ALJ has an "independent duty to fully and fairly develop

the record and to assure that the claimant's interests are considered."[101]  However, an

"ALJ's duty to develop the record further is triggered only when there is ambiguous

evidence or when the record is inadequate to allow for proper evaluation of the

---

So, for the first hypothetical, let's assume that we have an individual of the same age, education, and work experience as that of [Plaintiff], and who is limited to . . . medium level work with the occasional climbing of ladders, ropes, or scaffolds, frequent kneeling, frequent crouching, and crawling.  And this person is limited to frequent right reaching in all directions.  This person is to avoid concentrated exposure to hazards, such as machinery and unprotected heights.  A.R. 55–56.

The ALJ followed up with a hypothetical limiting the individual to occasional contact with the general public and another hypothetical substituting light work for medium work, but she did not change any of the exertional limitations.  A.R. 58.

[98] A.R. 20.

[99] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015).

[100] Docket 21 at 9–12.

[101] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted).

evidence."[102] And yet when a claimant is unrepresented, the ALJ has a heightened duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" to protect the claimant's interests.[103] This includes ensuring that both favorable and unfavorable facts and circumstances are addressed at the administrative hearing.[104] "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect [his] own interests."[105]

### 1. Plaintiff's Other Physical Impairments

In his testimony, Dr. Golub acknowledged Plaintiff's sleep apnea for which Plaintiff had a CPAP. He also noted Plaintiff's knee pain, but concluded the knee pain "was not evaluated in any great sense." Dr. Golub also acknowledged a diagnosis of keratoconus in both eyes in the record, but he concluded Plaintiff's visual acuity was within normal limits and "there was no action to be taken." He stated, "I believe the comment was to follow or continue to observe." Dr. Golub testified that he "didn't see anything for both of those complaints" regarding tinnitus, migraines, and flat feet, in the record.[106]

Plaintiff testified that he had received a 100% VA disability rating and had been treated for sleep apnea; flat footedness bilaterally; chronic knee, hip, and shin pain; and

---

[102] *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011) (internal citations omitted).

[103] *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978) (citation omitted); *see also Vidal v. Harris,* 637 F.2d 710, 713 (9th Cir. 1981); *Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir. 1985).

[104] *Cox,* 587 F. 2d at 991.

[105] *Tonapetyan,* 242 F.3d at 1150.

[106] A.R. 43–44. The Court assumes that Dr. Golub intended to testify that he didn't see "anything" in the record regarding all three complaints — tinnitus, migraines, and flat feet.

lower and upper back pain.[107]  Contrary to Dr. Golub's testimony, Plaintiff clarified at the hearing that he had "keratoconus [in] both eyes, [for] which I did have surgery on my right eye most recently, to halt the progression of the keratoconus."[108]  Plaintiff's testimony is again supported by the record.  In January 2016, treating physician Dr. Homan diagnosed Plaintiff with laxity of all joints.[109]  Imaging during the relevant time period showed minimal sclerosis and flattening of the second metatarsal head on the left foot; a right ankle abnormality; disc space narrowing in the thoracic spine; and questionably fused facet joints in the cervical spine.[110]  In February 2016, Plaintiff was diagnosed with bilateral pes planus and reported to his provider that he experienced pain with walking and could not walk more than 15-30 minutes before needing a break.  Plaintiff was also diagnosed with bilateral knee strain with abnormal range of motion in both knees and bilateral shin splints with mild tenderness along the anterior tibia on examination.[111]  Again, the ALJ did not follow up with Plaintiff or Dr. Golub regarding the additional impairments diagnosed in the record and testified to by Plaintiff at the hearing.[112]  Given the "heavy burden" imposed on the ALJ in the absence of legal representation and the facts of this case, the ALJ did not adequately develop the record regarding Plaintiff's physical impairments.

---

[107] A.R. 51–52.

[108] A.R. 52.

[109] A.R. 732.

[110] A.R. 804, 808, 811, 812.

[111] A.R. 382–83, 390–92, 398.

[112] A.R. 42–54.

Case 3:20-cv-00220-SLG   Document 25   Filed 11/04/21   Page 23 of 29

*2. Mental Impairments*

Plaintiff alleges that the ALJ "wholly failed to inquire further with respect to Plaintiff's mental impairment in light of persistent treatment, reported symptoms, medication changes, and intermittent positive findings on mental status examinations."[113] Defendant argues that the ALJ extensively discussed and evaluated Plaintiff's mental impairments at step two in the disability analysis and reasonably found them non-severe. Specifically, Defendant asserts that under the new regulations effective March 27, 2017, "the focus at step two is only on objective medical evidence" and that "'[p]sychiatric signs' are now defined as 'medically demonstrable phenomena' and 'must . . . be shown by observable facts that can be medically described and evaluated.'"[114]

The ALJ determined that Plaintiff's major depressive disorder and panic disorder were non-severe.[115] The ALJ discussed and explained the treatment notes addressing Plaintiff's mental impairments. She found persuasive the opinion of testifying medical expert Dr. Buechner that Plaintiff's mental limitations were mild and Plaintiff would not experience any workplace limitations. The ALJ determined that the opinion was

---

[113] Docket 21 at 12.

[114] Docket 22 at 16, citing 20 C.FR. § 404.1521 (Jan. 18, 2017) ("[A claimant's] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."), 20 C.F.R. § 404.1502(f) (Mar. 27, 2017) ("*Objective medical evidence* means signs, laboratory findings, or both."), 20 C.F.R. § 404.1502(g) (Mar. 27, 2017) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.").

[115] A.R. 16–19.

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 24 of 29

consistent with and supported by the evidence of record. Specifically, the ALJ noted that Plaintiff showed "some variability in a depressed mood but all other symptoms are typically reported as 'historical.'"[116]

The Court's review of the record shows that Plaintiff's depression and anxiety symptoms were not historical.[117] For example, in December 2016, Plaintiff was diagnosed with unspecified depressive disorder. Plaintiff reported that his current dose of Prozac increased his headaches, but he was "okay with that for now because his mood feels much better."[118] In January 2016, Plaintiff reported an "exacerbation of both depression and anxiety over the last month." He also reported that his fluoxetine medication helped his depression, but it did "not seem to do anything for his anxiety."[119] Also in January 2016, screening tests showed a GAD score of 10, indicating moderate anxious symptoms. His PHQ-9 score indicated moderately severe depressive symptoms.[120] In February 2016, Plaintiff attended a follow up behavioral health appointment, reporting a low mood and requesting a transition to Wellbutrin.[121] He was

---

[116] A.R. 17.

[117] *E.g.,* A.R. 51, 420–27, 430–35, 488–98, 534–36, 538–41, 573–74, 579–82, 586–87, 595–98, 706–08, 723–30, 735–37, 1092–94.

[118] A.R. 534.

[119] A.R. 723.

[120] A.R. 737.

[121] A.R. 430.

Case No. 3:20-cv-00220-SLG
Decision and Order
Page 25 of 29

diagnosed with major depressive disorder, recurrent, moderate, with anxious distress.[122] In May 2016, Plaintiff reported feeling "more depressed" and requested increasing his dose of Wellbutrin despite reportedly suffering some nausea secondary to the medication.[123] In November 2016, Plaintiff was diagnosed with unspecified depressive disorder.[124] In July 2017, at a psychiatric appointment, Plaintiff reported feeling more anxiety and sadness. His psychiatrist adjusted his medications.[125] In November 2017, Plaintiff was again diagnosed with unspecified depressive disorder. He reported being more depressed after stopping his fluoxetine medication, but that his mood over the last few weeks had been improving. He requested an increase in his anxiety medication.[126]

However, the Court's review also reveals that Plaintiff's mental status examinations did not demonstrate "abnormalities of behavior, mood, thought, memory, orientation, development, or perception" as medically described by Plaintiff's providers.[127] As shown above, at visits from January 2016 through November 2017, Plaintiff reported varying degrees of depression and anxiety symptoms. Plaintiff's treating psychiatrist adjusted Plaintiff's medications frequently. However, also during this time period, Plaintiff's treating psychiatrist repeatedly noted on mental examination that Plaintiff was very pleasant and

---

[122] A.R. 488.

[123] A.R. 420.

[124] A.R. 540.

[125] A.R. 573–74.

[126] A.R. 1092–93.

[127] *See* 20 C.F.R. § 404.1502(g) (Mar. 27, 2017).

in no apparent physical distress or discomfort; Plaintiff described his mood as numb; his affect was restricted but pleasant; he demonstrated good insight and judgment; he showed no obvious cognitive effects; and he expressed no suicidal or homicidal ideation.[128]  Plaintiff reported that his "depression and anxiety together cause me to be unable to be around other people," but also demonstrated pleasant behavior and good insight and judgment at his psychiatric appointments.[129]  He reported working in 2014 for his wife, planning a business that he and his wife had been saving for, and planning a new house.[130]  Plaintiff also reported being able to handle changes in routine.[131]

In sum, the ALJ fulfilled her heightened duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" with respect to Plaintiff's mental impairments.[132]  The ALJ fully and fairly developed the record regarding Plaintiff's mental impairments and substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were non-severe.

E.  Prejudice or Unfairness Due to Lack of Counsel

Plaintiff also alleges that he was prejudiced by his lack of counsel.  Specifically, without counsel, he asserts that he did not know to object to the ALJ proceeding with the

---

[128] *E.g.,* A.R. 420–27, 430–35, 488–98, 534–36, 538–41, 573–74, 579–82, 586–87, 595–98, 706–08, 723–30, 735–37, 1092–94.

[129] A.R. 321.  *See* n. 116.

[130] A.R. 18, 491, 589.

[131] A.R. 301.

[132] *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978) (citation omitted); *see also Vidal v. Harris,* 637 F.2d 710, 713 (9th Cir. 1981); *Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir. 1985).

Case 3:20-cv-00220-SLG   Document 25   Filed 11/04/21   Page 27 of 29

testimony of the medical experts before his own testimony and was unable to question the medical experts about all of the relevant facts and all of his impairments.[133]   In this case, counsel for Plaintiff could have obtained additional testimony from Dr. Golub and Plaintiff regarding Plaintiff's limitations, particularly the functional limitations associated with Plaintiff's left shoulder.   Counsel could have elicited testimony from the VE based on a hypothetical including bilateral upper extremity limitations.   Plaintiff has demonstrated prejudice and unfairness in the administrative proceeding as a result of not having counsel present.[134]   Remand is appropriate on this ground as well.

F.   Scope of Remand

Plaintiff asks the Court to vacate the final agency decision and remand to the Commissioner for a de novo hearing with Plaintiff's counsel present.[135]   The "ordinary remand rule" applies to disability cases.   Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[136]   In this case, Plaintiff was prejudiced by the ALJ's failure to postpone his administrative hearing to obtain counsel.   And the ALJ did not adequately consider all of Plaintiff's physical impairments.   Because outstanding issues remain and

---

[133] Docket 21 at 5–6.

[134] *Vidal,* 637 F.2d at 714–15.

[135] Docket 21 at 15.

[136] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

it is not clear from the record that the ALJ would be required to find Plaintiff disabled, the proper remedy is reversal and remand for a de novo hearing with Plaintiff's counsel present.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence in the record. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 21 GRANTED, the Commissioner's motion at Docket 22 is DENIED, and this matter is REMANDED for further proceedings consistent with this order.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 4th day of November, 2021, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE